Final case this morning is number 22-2891, Eric Trent against County of Somerset and Gerald Walker. Mr. Furman. Good morning. Chris Furman for Somerset County and Gerald Walker. I'd like to start, oh, and I'd like to reserve four minutes for rebuttal. Granted. I'd like to start this argument with a little bit of a different sort of an exercise to illustrate what the point is here. I'd like to suppose for a second that Judge Smith has arrest power and Judge Fisher just yelled at me. And I asked Judge Smith to now go arrest Judge Fisher. That's what we have here. And that's not enough, even if it were in retaliation for Judge Fisher's yelling at me as his First Amendment right. That's not enough to have a case against me or a claim against me if I'm an elected public official to pierce qualified immunity because I didn't directly take that action against Judge Fisher. I can't arrest him. I can only ask Judge Smith to arrest him. And that's what we have here. And this court has already decided that it's never been established that a government official who does not himself retaliate but instead pressures another individual to retaliate can be held personally liable. What really is the theory of liability here that Mr. Trent has pled? Is it that there was an improper arrest, maybe improper because Mr. Walker directed it or is he making a claim for effectively unjust discharge of him? I wasn't entirely clear from the First Amendment complaint just theory. Well, it's an interesting question. I'm glad you asked it because the district court answered that question by inserting facts, which weren't alleged. The claim is that- That raises maybe another interesting question but an important question. Just how did the district court frame the issue here for qualified immunity purposes? Well, the district court concluded and added that one of the things that weren't in the complaint that Mr. Walker did have, that he did directly arrest Joe Walker because he had authority over state police. Mr. Walker is a county commissioner. He has no authority over state police. Based on the complaint, can't you conclude that Mr. Walker's report was certainly the but-for cause of Trent's arrest? Well, certainly. But if I were to call the state police and accuse somebody of a crime, they might come arrest me. You're a county commissioner. You represent one here. Yes. County commissioner makes it equal, which leads to Trent's arrest. I certainly would- We're just saying that what your argument is, the state police was supposed to investigate the county commissioner's complaint about Mr. Trent. But state police aren't part of this case. Certainly, your client is part of this case. Correct. But the reason he is and the reason they are an issue is as a county commissioner, he doesn't have authority over any state police. He has authority, however, to move for or to vote on for both the discharge of- One of three votes. Yes, correct. Yes, exactly. Was it a unanimous vote? It was, yes. That's it. So you obviously can't argue he didn't have any role in the discharge. No, I don't say that. But what I'm arguing is he's still entitled to qualified immunity for what he did. He's acting in his official capacity as a county commissioner. But aren't we in the problem with your argument? And I understand your argument. It isn't a problem with your argument. You wrote a motion to dismiss state. And you're asking the court to grant Commissioner Walker qualified immunity. Yes. And the problem is the complaint says, Trent's complaint says, you know, I'm at this mega fair, a mega show. I went up to Walker. I complained about the county commissioner's hiring policies. I told him I was going to campaign against them for reelection. And then by the way, I'm a supervisor in XYZ Township and I work in the next department. And those are all part of it. In his complaint, it says, all I did was went up and told him I don't like your hiring policies and I'm going to campaign against you. Aren't you stuck with that being the only conduct that you can attribute or that Walker can attribute to Trent to get him arrested? Yes, it is. Isn't that insufficient to establish probable cause for anything? Probable cause was not an issue. It wasn't raised in this complaint, Mr. Trent was- It wasn't raised because he said, this is all I said. He said what he said and the complaint's all we have to go on. Correct. Based on the reading of that complaint. In my opinion, there's clearly no probable cause to arrest Trent for anything. Well, the state police would disagree because they did arrest him. And what happened to the case? He was acquitted or found not guilty. But that doesn't equate to probable cause. It was a turn off. There's nothing in the record to show actually what happened. If that were the case, anytime anybody was not guilty, then everybody would be guilty of that. I understand that. We're here on your motion to dismiss on the basis of qualified immunity. Yes. We're stuck with what Trent said. But what Trent said isn't what the issue is for purposes of qualified immunity. It's what Mr. Walker did that has to pierce qualified immunity. If it had been for his complaint to the state police, Trent would not have been arrested. Do you agree with that? Yes. And he's immune from liability for that. All right. Because he's- Trent said, this is all I did. I told him I didn't like his hiring. I'm going to campaign against him. What if the complaint had pleaded absence of probable cause? Well, then we'd be having a different argument right now. Would you have an argument? If the complaint had pleaded the absence of probable cause, are we not even here or do you have some argument? I might have a few more paragraphs in the brief if that were the case. But that wasn't the issue in this case. It's not the issue. It's not going to be the issue. Probable cause was not the issue at any time. The issue is- What precedent of the Supreme Court or this court says that the cause must be pleaded for false arrest, for retaliatory arrest? Well, the Supreme Court precedent of Pearson that the first amendment claim is not enough to pierce qualified immunity. McLaughlin says urging of this court, McLaughlin says urging to have them to act on your behalf isn't enough to pierce qualified immunity. The case that talked about probable cause, those were just some of the particular facts are being analyzed in that case. In this case, we have to look, and this is where Trent failed. He has to plead enough facts so that the court can determine that Mr. Walker did retaliate by more than just a first amendment claim. A first amendment violation. He has to threaten somebody. What he did plead was the fact that allegations that your client made were false. Isn't that- Well, that's not- Excuse me? False doesn't mean that was his intent. Anytime somebody goes to court and they have different things on the stand, somebody's going to be wrong and somebody's going to be right. That doesn't mean they're lying. He doesn't say that they were inaccurate. He doesn't. He says they were false. False accusations of plaintiff's conduct, including his overly intoxicated and physically threatening to a defendant Walker. He doesn't say- He says that in paragraph 26. He does. But what he doesn't say in that paragraph is that Mr. Walker knew those things to be false. If Mr. Walker believed that he was overly intoxicated and aggressive, that's certainly not false at the time. And just because he couldn't prove it doesn't mean that that was an intentional false misrepresentation or a false statement that he knew of at the time. That doesn't reach the level of going beyond a general First Amendment right to, I'm seeing how many y'all, that doesn't reach the level that we have to get to to show that that elected official has taken some other, either a threat or coercion or a threat of death or harm that you actually have to do to convince somebody. In this case, I would have to threaten Judge Smith to arrest Judge Fish. Counsel or something. Paragraph 26, First Amendment. It says that the Walker report of false activism and misconduct cannot be included. Then it goes on with the intent of, obviously it means of influencing the decision to take disciplinary action against the plaintiff and acquiesced to the decision to discharge the plaintiff knowing that the accusations were not true. Acquiescing? No, no, no. So what's that mean? Knowing that the accusations were not true. Why do you take that approach? What do you think that's alleging? That the client said these things believing they weren't true? I believe that he did. And Ulysses for that as well. That he reported those instances to the state police. That this is what he reported to the state police. Well, regardless of what you believe, we have to accept the plea to material is true. Well, so even if it was, let's take that as true. He did intend it to be false. It's still not enough to pierce qualified immunity. You have to take the underslay of this court. You have to take that extra step. There has to be threats of severe harm or death. Something to coerce that third person to act. We're not talking about Gerald Walker directly. The crux of your argument, as I understand it, is that because the state police have an independent duty to decide whom to arrest, there can't be a causal nexus between the allegedly defamatory,  and the state trooper's decision to arrest. That's only partially correct. The real crux of it is that for the elected official to have, to pierce his qualified immunity when he is asking somebody else to act, a third party, there has to be something more than that. There has to be a threat or coercion of the- More than what? More than asking somebody to do something. So if Commissioner Walker had said to the state trooper, look, I need you to arrest this guy. Here's what he did to me. And the trooper investigates, trooper says, no, I'm not seeing it. And Walker says, I'm gonna fire you if you don't arrest him, then you lose, correct? Well, maybe that would be, that seems to be what you would- I thought you just said threats or coercion. I just gave you an example of threats and coercion, but you're still pushing that. Schlegg said the threats or coercion have to be severe harm or death. So threatening somebody with their- So threatening their livelihood doesn't count. It doesn't bring us to the level. All right, what about the other issue? We've talked a lot about the arrest. What about the argument of retaliatory discharge? Well, the county is still gonna be on the hook for this case as it goes forward. We're not talking about whether- We're only dealing with Walker here. The county, when you say the county on the hook, you mean the case is going forward. The case is gonna go forward. The county did not- All right, but why is Walker off the hook for a retaliatory discharge claim? Because he's entitled to qualified immunity for his actions as the elected official. He's allowed- Is that because there's no clearly established law or is it because he only had one vote and two votes were required to fire? What's the reason? I think the law is quite clearly established that when you have an elected official asking a third party act, there has to be more than just a request from the third party to act. It has to be coercion- I'm not talking about the arrest. I'm talking about the discharge. He didn't ask anyone to act about the discharge. Turlington or some- It's the same analysis, Your Honor. The other commissioner made the motion to discharge. Correct. What's your argument as to why a client is not potentially liable for the discharge? To pierce Mr. Walker's immunity. And in that instance, we would have to show, or it would have to be alleged that Mr. Walker threatened Mr. Terlingo with severe protection. We have to show that his complaint- All we have to show, in my view, would be he complained to his colleagues on the board. This is what they can make it show. And I think this guy said, I'd like to see him discharged. He said the process in motion. Based on that set of facts, they discharged him and he voted yes. But then that would be for Mr. Walker's first amendment, right? And nobody would ever run for a county commissioner if you could be arrested for saying to somebody who's your colleague that he should work for us anymore. If you could get liability for that, who would run to be a county commissioner? Who would do it? You're exercising your discretion as your commissioner. I often ask that question myself, but it has nothing to do with the results of this case. I see your argument, but I don't. All right. We'll hear you on rebuttal, Mr. Dockery. Thank you. Good morning. May it please the court, John Dockery for appellee. This appeal involves one of the most fundamental rights of any American citizen, and that is to complain and criticize conduct of our public officials and to be free from retribution. So if you have two degrees of liability here, is it the retaliatory arrest or retaliatory discharge or are the two somehow connected? We believe they're connected. When examining this case, I think it's important to look at the status of Mr. Trent as both an employee of Somerset County and a resident of Somerset County. So the actions taken by Walker in this case impacted both. The affirmance in the complaint established that Mr. Trent in his individual capacity as a citizen raised complaints in county commissioner meetings regarding the hiring practices. And again, the affirmance alleged that at the mega show, Mr. Trent approached Mr. Walker and again, raised those issues. And upon disagreeing with his position on that, indicated that he was gonna work against his reelection as a county commissioner. So based on those circumstances, we're alleging that Walker in his individual capacity took action to make false accusations, not only to police, but to Somerset County. Let's start with the false accusations to the police. In the Supreme Court's decision, 2006 decision of Hartman to state a claim for first amendment retaliatory prosecution the plaintiff must plead absence of probable cause. Where in your complaint did you plead absence of probable cause? Well, we allege that it was a false accusation. So to the effect that- Okay, but that's not the same as probable cause because in theory, Mr. Walker could have called the state police and said five or six false things. And the state police might've had probable cause to arrest him because some of the things Mr. Walker said might've been true. So for example, if Mr. Walker called the state police and told the truth and said, Trent was menacing me at my booth or he was trespassing onto my booth at the mega show, that's true. Let's assume that's true. And then let's assume that he embellishes and lies and says he shoved me, he threatened to kill me and those were lies. The state police would still have probable cause to arrest just not for the lies, for the truth, correct? Not necessarily. If there was a true statement of a threat and a menacing and a trespass, it's your argument that the state police would not have probable cause to arrest? No, we believe that they have probable cause to investigate. So what we've argued is that- You know that's probable cause to investigate. Well, then if you receive a complaint of potential criminal conduct- My point is that both things can be true at the same time. It can be true that Mr. Walker lied to the state police when making the report. And it could also be true that independent of that lie, the state police had probable cause to arrest. Where in your complaint did you plead that they were utterly lacking in probable cause to arrest the client? We didn't use the specific word probable cause or term probable cause. So you didn't plead it? Well, we did not use that language. However, we did allege that they were false accusations. Is that language required under Hartman? No, we don't believe so. Tell us why. Well, taking into consideration the status of the parties, the relationship of the parties and the nature of the retaliatory action, we allege that based on Mr. Walker's position as a county commissioner, a person of power, person of influence in a small rural county, that the false accusation he would make would weigh heavily in any determination by either law enforcement or HR officials within Somerset County. Right, but it's not actionable if it weighs very, very heavily and they still have probable cause. That's the law, right? His intent, I'm granting you, let's assume for purposes of argument that Walker had evil intent here. However evil his intent may have been, if the state trooper had probable cause to arrest, then it's not actionable against Walker. That's the law, isn't it? Well, I think we need to keep in mind here that there actually was no arrest. There was simply the filing of charges. There was no- Okay, so then you don't have a claim for false arrest or retaliatory arrest. Well, there was false charges that we allege. False prosecution. False prosecution. False prosecution, correct. Okay, and for there to be a false prosecution, does there not have to be an absence of probable cause? Who was the affiant on the criminal complaint? I believe the state trooper. That was not a private complaint, right? It was not a private complaint. And the state trooper has an independent obligation to file a valid affidavit of probable cause. Does your complaint allege that the state trooper lied in the affidavit of probable cause? My understanding is there was no affidavit of probable cause. It was a summary charge. Well, there was no... I thought you just told Judge Fischer that the affiant was the state trooper. Yes, the affiant was. You can't have an affiant without an affidavit. Right, so the trooper is the one who filed the charge based on accusations- The trooper has an independent duty to tell the truth in filing the charge, right? He does, however- So it's like you're making a Caspar claim here that the trooper had no independent agency because Walker exerted his immense power over the trooper to cause the trooper to lie. Is that the crux of the case? Well, the crux of the case, again, is that the false accusation. Mr. Furman referred to the- Then file a defamation case. But it's not just about the false accusation of charge. It's about the impact on him as a citizen, as an employee. Well, then, okay, that gets to the other point. Then this case seems like a retaliatory discharge case, not a retaliatory arrest case. So what about the point that there are three commissioners here and that even if Walker had voted to discharge a client, the other two commissioners had the power and duty to not discharge him if it wasn't warranted? We have argued that preceding the decision to discharge, that there was a show of intimidation and a show of force by having Mr. Trent physically removed, forcibly removed from the workplace as an attempt to intimidate him, as well as others who spoke out against Walker. In essence, you have a 1983 claim here. Correct. It's a whole host of things bundled into it. He was discharged after a lot of no hearing and he had a criminal complaint served on him, which he had defended himself against. He was offered out by the county personnel and the state police. All of this was done under color of law by Walker, who was serving as a duly elected county commissioner in Somerton County. That's your claim, right? That's correct. Okay, and in essence, you could argue that the right that was violated was his right to be free from a retaliatory discharge for his comments and to be free from a retaliatory criminal complaint filed against him for his comments. But it's still one thing. That's correct. So doesn't it get us back, isn't the crux of this issue the question of whether or not Walker's actions and telling his colleagues leading to his discharge a violation of Mr. Trent's clearly established rights? Doesn't it get back to that? It does. It does. And when considering whether Walker violated clearly established right, I think it's important to take a look at, again, the status of the parties, the relationship of the parties and the nature of the retaliatory action. The status of the parties, again, we have a county commissioner, one of the three most powerful people in the county. And the other hand, we have a county maintenance employee. Would complaints, false complaints or accusations made by a county commissioner be taken more seriously? Would individuals be willing to act on their behalf more likely because they come from a county commissioner? We believe so. Well, that seems to be obviously true, but what's the case or what are the cases that say when a commissioner sort of has a grudge or has it in for a worker of the county that it violates the worker's clearly established rights? Well, the district court recognizes the threat to public employment is a- I'm asking you to tell us what case. Clearly established law requires a case in court of the United States for, at the very least, a consensus of circuit. Pickering. I was just about to say, no one has even whispered the word Pickering throughout both arguments so far. And what were the facts of Pickering? Pickering involved an individual in public employment speaking out in terms of issues of public importance. On a matter of public concern. Yes. So what was the matter of public concern that Trent was speaking about? The hiring practices of the county. And his hiring outside of the county wasn't specifically in the outsourcing. He complained that residents, citizens of Somerset County were not taking into consideration when filling positions within the county. In particular, they had hired not only out of county, but out of state employees to fill positions that many people within the county felt that in-county officials were appropriate for. Doesn't that seem like a workplace grievance more than an issue of public concern? Not necessarily because it was... Because he wanted a promotion. He was upset that he wasn't getting promoted. The specific incident that he complained about did not involve him specifically. So it involved an ex-prison official. But wasn't he at some point seeking a promotion? Isn't that in the record or am I just beyond imagining that? But I thought he was at some point seeking a promotion. My recollection is that, yes, he probably was at some point, but... Do we have any record here other than the original complaint in the first? No, we don't. So we'll keep this incorrect. The only thing we've alleged in some kind of promotion. The only thing we've alleged in the complaint is that he complained about the county hiring practices. So it's our position. And there's nothing in the complaint about him seeking a promotion? No. So even if it was him... Where did I get that? You didn't tell me. I think you were gonna tell me I was imagining that because I don't remember all the details. But you didn't tell me that. Were you just being polite or is there something somewhere in the record not in the complaint? There's nothing in the complaint. He agrees for promotion. Yeah. That's my experience. So the only thing we've alleged in the complaint is him kept complaining about the hiring practices. And that was the warden and someone else. Yeah, it was a warden. They hired an out of state. Out of state warden. Okay, all right. All right. No, I have no other comments. We're all set. All right, well, thank you very much. Thank you. We appreciate getting the time back. Thank you, Mr. Dark. Mr. Furman. Thanks for letting me have some more rebuttal. I know I went over it last time. So the reason Pickering wasn't brought up earlier because Pickering really isn't analogous to anything in this case. Pickering doesn't help you. Well, the cases that are more on point. Well, it does, but it's also not really analogous. But the cases that are closer to our facts and that came out of this court, the McLaughlin case and Zaloga case. For McLaughlin, we had the US attorney. And of course, all of these people are officials who would be entitled to qualified amnesties because of their position. So the fact that Mr. Walker is a county commissioner really doesn't give him any bonus points on their claim. Due to the two cases you just mentioned, both the phone and the firing of a public employee. Which is what we've all agreed here today on the panel, guys, that this is a discharge case. So those two cases would be more analogous. And McLaughlin, it was the US attorney who urged other people to terminate as deputies. And Zaloga was a politician who urged other members of his body not to do work with another contractor. The same thing that happened- Not a firing. Not a firing. But you're saying it would be, but you're talking about a public contract. Pickering would have absolutely done that. To that case, to Zaloga. Not to Zaloga, no, no. But those two cases are more on point to the extent that you have somebody on that governing body who has a vote telling other people to vote their way. And in the Zaloga case, they did not award a contract to a public bidder, which is equivalent to, I mean, that's his work. It would be, well, he wasn't an employee to be terminated. They didn't give him the job. And even if all of this, taking all this as true, the Supreme Court in Pearson has already determined that the first, and my colleague came up here and said, this is a fundamental right to the First Amendment. We know that. But the Supreme Court and this court has said that just getting there is not enough to pierce qualified immunity. You have to have that second step. And- You didn't tell us, you declared that this case is different than Pickering, but you didn't explain why. Well- You directed us to other cases that Judge Smith highlighted some reasons why those cases might not be as apposite as you think they are. Why is Pickering as helpful to Mr. Dougherty as he thinks it is? Well, you don't have the elected official there. You have a public, you have a teacher, and it's in an education setting, not in the county government. What difference does that make? Well, it makes- The plaintiff's witness was a teacher. Spoke out on the newspaper, or both, and was fired. Well, it just makes McLaughlin more close to our case than what Pickering is. And neither of us cited to it in our argument. I mean, I presume for that reason. It's just not as close. I mean, Pickering involved a public employee with less power, Trent's a public employee with less power. The superior didn't like what the underling said. He got fired. That seems to be pretty close. If you go general enough, we can make a lot more places closer, too. I'm just saying of the cases that were cited by both sides, if we go general and broad enough, we can bring a lot more cases into that umbrella of being similar. But in the cases that have been cited, in the cases that we're discussing- But we've just asked you about what is perhaps the seminal case in this area of 50 years and how this case may track it. And I don't know how getting more general gets you anywhere. Or maybe you can point out some distinguishing features that you take it out of the realm of generality you are generally referring to. Well, not beyond what I've already said. And we have the more recent cases, which are more analogous. And I think those should be given more weight by the court. Thank you, Mr. Frum. Thank you, Mr. Dodd. The court will take the matter into advisement. Thank you.